# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**MICHAEL RAY** and **REBECCA RAY,**

    Plaintiffs,

v.                                                               2:24-cv-873-SPC-NPM

**QBE SPECIALTY INSURANCE COMPANY**,

    Defendant.

## ORDER

In this breach-of-insurance-contract case arising from property damage after Hurricane Ian, defendant QBE Specialty Insurance Company moved to compel an appraisal and otherwise stay this action. (Doc. 9). Plaintiffs Michael and Rebecca Ray filed an untimely response,[1] arguing that QBE's motion should be denied because they "did not elect to proceed with appraisal." (Doc. 17 at 2). If the court were to take plaintiffs' word at face value, we would agree that QBE's appraisal request is not ripe because the policy's appraisal provision requires mutual assent. (Doc. 9-1 at 3). But plaintiffs' opposition is disingenuous

---

[1] QBE filed its motion to compel appraisal on September 26, 2024. However, not until almost one month later did plaintiffs belatedly file their response in opposition, and in doing so, also failed to provide any excusable neglect. QBE's motion could be treated as unopposed. *See* M.D. Fla. R. 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed."). We have nevertheless considered plaintiffs' response.

On November 20, 2023, ***QBE and plaintiffs agreed to appraisal*** and selected their respective appraisers, Claudia Navia and Guillermo Saavedra, who, in turn, selected umpire Darrell Davis. (Doc. 9-2 at 2, 5, 8-11; Doc. 9-3 at 2). Then, the appraisers agreed to conduct an inspection on January 9, 2024, which later had to be rescheduled because appraiser Saavedra could not attend the inspection on that date. (Doc. 9-3 at 2). On January 15, 2024, plaintiffs wanted to terminate the appraisal. (Doc. 9-2 at 2, 14).

Plaintiffs do not take issue with the fact that they agreed to appraisal and appointed an appraiser. Instead, they argue—in a rather underhanded manner—that they elected not to move forward with appraisal, as if they never agreed to appraisal in the first place. We do not appreciate the lack of candor. Furthermore, plaintiffs offer no legal authority for the absurd proposition that they may reverse course (at any time) and rescind their agreement to appraisal. So, QBE's motion is **granted**. The clerk is directed to place a stay flag on the docket pending completion of the appraisal. The following procedures and deadlines apply:

**Discovery During Appraisal:** The court's experience in other insurance-coverage matters with appraisal issues has revealed that parties and appraisers sometimes find that the tools of formal discovery can facilitate the appraisal process. And as provided in the Federal Arbitration Act, a majority of the appraisal panel "may summon in writing any person to attend before them or any of them as a

witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." *See* 9 U.S.C. § 7.[2] Likewise, a party may, with the concurrence of at least two members of the appraisal panel, conduct discovery concerning the amount-of-loss issues referred to the appraisal panel for resolution.

**Form of the Appraisal Award:** For each covered subpart of the property (to the extent there are multiple), the appraisal panel must delineate corresponding replacement-cost values, actual-cost values, ordinance-or-law figures, and any other policy-benefit figures as appropriate. *See* Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto."); *see also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (reasoning that each clause in an insurance policy must be read in conjunction with the entire policy). RCV awards must further

---

[2] *See Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (appraisal constitutes an arbitration for purposes of the FAA); *Martinique Properties, LLC v. Certain Underwriters at Lloyd's London*, 567 F. Supp. 3d 1099, 1106 (D. Neb. 2021), *aff'd sub nom.*, 60 F.4th 1206 (8th Cir. 2023) (same); *Register v. Certain Underwriters At Lloyd's*, No. 5:20-cv-52-TKW-MJF, 2020 WL 6106624, *3 (N.D. Fla. Apr. 20, 2020) (same); *Liberty Mut. Grp., Inc. v. Wright*, No. CIV.A. DKC 12-0282, 2012 WL 718857, *6 (D. Md. Mar. 5, 2012) (requests to appoint an appraisal umpire are processed as motions under the FAA); *see also Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004) (an agreed method to reach a binding resolution by a third-party neutral about a fact in dispute constitutes an arbitration for purposes of the FAA).

delineate separate figures for each component (e.g., roof, gutters, each window, each door, the drywall for an interior room, etc.).[3]

To the extent the award includes any figures for replacing undamaged items to match the replacement of damaged items,[4] any such award must be separately set forth in the RCV award and no portion of it should be included in the ACV award. *See Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1283-1285 (Fla. 3d DCA 2020) (the cost of matching is not relevant or recoverable when repairs have not been made such that recovery is for actual cash value only).

Overall, the award must be made with full consideration of the provisions, exclusions, and other terms of the insurance policy. After the appraisal panel determines what was caused by the covered peril, as opposed to excluded causes, and further determines the amounts and values of the losses attributed to the covered peril, the court will account for policy limits, deductibles, and prior payments before entering any judgment.

**Completion of Appraisal:** The appraisal process must be completed by **June 9, 2025**. Within **one week** after the appraisal concludes, the parties must promptly

---

[3] Commonly done using software such as Xactimate or Symbility.

[4] For example, replacing undamaged wood flooring when replacing damaged wood flooring because the original flooring material is no longer available or suitable. This is distinct from the replacement of an entire component, such as a roof, for any other reason (such as a regulatory standard that requires the replacement of an entire system when a certain portion of it must be repaired or replaced).

file a joint notice informing the court of the outcome of the appraisal and attach a copy of the appraisal award. The parties must also contemporaneously file a joint motion to lift the stay and advise the court about the nature of any further proceedings that may be appropriate.

**ORDERED** on March 7, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge